1  LANAHAN & REILLEY
   MICHAEL J.M. BROOK  SBN 139595
2  600 BICENTENNIAL DR STE 300
   SANTA ROSA  CA  95403
3  (707) 524-4200; (FAX) 523-4610
   e-mail mbrook@lanahan.com
4

5  Attorney for Plaintiff

6

7              UNITED STATES DISTRICT COURT

8            EASTERN DISTRICT OF CALIFORNIA

9

10 WILLIAM BARDIN,                    CASE NO. 2:09-CV01593-WBS-KJM

11         Plaintiff,
   v.                                 **PLAINTIFF'S OPPOSITION TO**
12                                     **DEFENDANTS BANK OF AMERICA**
   BANK OF AMERICA, N.A.; AMERICA      **CORPORATION, MORTGAGE**
13 HOMEKEY; MORTGAGE ELECTRONIC        **ELECTRONIC REGISTRATION**
   REGISTRATION SYSTEMS, INC.; US      **SYSTEMS, INC., AND COUNTRYWIDE**
14 FUNDING GROUP, INC.; JOHN MORRIS    **HOME LOANS, INC'S  MOTION TO**
   and DOES 1-20 inclusive,           **DISMISS PLAINTIFF'S FIRST**
15                                     **AMENDED COMPLAINT AND**
          Defendants.                 **MOTION TO STRIKE PORTIONS OF**
16 _____/   **PLAINTIFF'S FIRST AMENDED**
                                       **COMPLAINT; MEMORANDUM OF**
17                                     **POINTS AND AUTHORITIES IN**
                                       **SUPPORT THEREOF**
18
                                       DATE:       November 9, 2009
19                                     TIME:       9:00 a.m.
                                       CTRM:       10
20
21      Plaintiff WILLIAM BARDIN ("Plaintiff") respectfully submits the following

22 Memorandum of Points and Authorities in Opposition to Defendants BANK OF AMERICA,

23 INC. (BofA), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'s ("MERS"),

24 and  COUNTRYWIDE HOMELOANS, INC.'s ("Countrywide")(collectively "Moving

25 Defendants") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss") and

26 Motion to Strike Portions of Plaintiff's First Amended Complaint ("Motion to Strike").

27 //

28 //

1

## TABLE OF CONTENTS

2  I.

3      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4  II.

       PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5  III.

6      FACTUAL SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7  IV.

8      DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9      A.    MERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10            1.    Creation, Purpose, and Operation . . . . . . . . . . . . . . . . . . . . . . . . 5

11            2.    Involvement in Plaintiff's Loan . . . . . . . . . . . . . . . . . . . . . . 8

12     B.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13            1.    Dismissal Is Inappropriate Under Rule 12(b)(6) . . . . . . . . . . . . . . . 13

14     C.    Specific Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15            1.    Plaintiff's Second Cause of Action for Violation of Rosenthal Act is
                    Sufficient to State a Cause of Action Against Defendants Bank of
16                  America, Countrywide and MERS . . . . . . . . . . . . . . . . . . . . . . 15

17            2.    The Plaintiff has Sufficiently Stated the Third Cause of Action for
                    Negligence Against Defendants Bank of America, MERS and
18                  Countrywide. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19                  a.    Plaintiff's Negligence Claim Has Been Properly Alleged
                          Against Each of the Moving Defendants. . . . . . . . . . . . . . . 17

20                  b.    Plaintiff's Negligence Claim Against Moving Defendants Is
                          Equitably Tolled and Is Not Barred . . . . . . . . . . . . . . . . . . . . 18

21            3.    Plaintiff's Fourth Cause of Action for Violation of RESPA. . . . . . . 19

22            4.    Plaintiff's Sixth Cause of Action for Fraud is Sufficient to State a
                    Cause of Action Against Moving Defendants. . . . . . . . . . . . . . . . . 19

23
              5.    Plaintiff's Seventh Cause of Action for Unfair Business Practices is
24                  Sufficient to State a Cause of Action Against Moving Defendants. . 21

25     D.    Moving Defendants' Motion to Strike Must Be Denied Because Plaintiff Has
              Alleged Sufficient Facts to Warrant Recovery of Punitive Damages . . . . . . 23
26

27  V.

       CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
28

1

<b><u>TABLE OF AUTHORITES</u></b>

2

**I.    CASES**

3

Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . .  13

Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9th Cir. 1990) . . . . . . . . . . . . . . . .  13

Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . . . .  13

Black v. Sullivan, 48 Cal. App. 3d 557, 566 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977) . . . . . . . . . . . . . . .  19

Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Cisco v. Van Lew, 60 Cal. App. 2d 575, 583-584 (1943)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Conley v. Gibson, 355 U.S. 41, 47 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Cruz v. Beto 405 U.S. 319, 322 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Davis v. Scherer, 468 U.S. 183 (1984)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

E-Fab, Inc. v. Accountants, Inc. Services, 153 Cal App 4th 1308 (2007)  . . . . . . . . . . . . . . . .  19

Farmers Ins. Exchange v. Superior Court, 2 Cal. 4th 377, 383 (1992) . . . . . . . . . . . . . . . . . . . .  22

Giraldo v. Department of Corrections & Rehabilitation, 168 Cal. App. 4th 231(2008) . . . . . . .  17

Gottreich v. SF Inv. Corp., 552 F.2nd 866 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Greenberg v. Sala, 822 F.2d 882, 886 (9th Cir. 1987)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Gretchen Morgenson, The Mortgage Machine Backfires, N.Y. TIMES, Sept. 27, 2009 . . .  4, 6, 8

Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F. 2d 1542, 1555 n. 19 (9th Cir. 1990) .  14

Hanna v. Plumer, 380 U.S. 460, 465 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122, (9th Cir. 2009) . . . . . . . . . . . . . .  22

Heller Fin. Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989) . . . . . . . . . . . .  23

Holder v. Home Sav. & Loan Assn., 267 Cal. App. 2d 91, 108 (1968)  . . . . . . . . . . . . . . . . . . .  17

In re Equity Funding Corp. of Am. Sec. Litig., 416 F.Supp. 161, 181 (C.D. Cal. 1976)  . . . . . .  20

In re Garcia, 11 B.R. 10, *12 (Bankr. D. Ariz. 1981)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

In re Hawkins, No. BK-S-07-13593, 2009 Bankr. LEXIS 877, at *3 (Bankr. D. Nev. Mar. 31, 2009)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8, 9

1    <u>In re Vargas</u>, 396 B.R. 511(Bankr. C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2    <u>Izenberg v. ETS Servs.</u>, LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) . . . . . . . . . . . . . 15

3    <u>Johnson v. Melnikoff</u>, 2008 WL 4182397, *4 (N.Y.Sup. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 22

4    <u>Kasky v. Nike, Inc.</u>, 27 Cal. 4th 939, 949 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

5    <u>LaSalle Bank Nat'l Assoc. v. Paramount Props.</u>, 588 F.Supp.2d 840, 860 (N.D. Ill. 2008)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
6
    <u>McGarry v. Sax</u>, 158 Cal. App. 4th 983 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
7
    <u>McGrew v. Countrywide Home Loans, Inc.</u>, 628 F. Supp. 2d 1237, 1242-1243 (S.D. Cal. 2009) 15
8
    <u>Neubronner v. Milken</u>, 6 F.3d 666, 671-672 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 19, 20
9
    <u>Norfolk Shipbuilding & Drydock Corp. v. Garris</u>, 532 U.S. 811 (2001) . . . . . . . . . . . . . . . . . . 17
10
    <u>Peart v. Ferro</u>,119 Cal. App. 4th 60 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
11
    <u>Phyllis K. Slesinger & Daniel McLaughlin, Mortgage Electronic Registration System</u>, 31 Idaho L.
12  Rev. 805 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

13  <u>Podolsky v. First Healthcare Corp.</u>, 50 Cal. App. 4th 632, 647 (1996) . . . . . . . . . . . . . . . . . . . 22

14  <u>Quiroz v. Seventh Ave. Center</u>, 140 Cal. App. 4th 1256 (2006) . . . . . . . . . . . . . . . . . . . . . . . . 18

15  <u>Ramirez v. Nelson</u>, 138 Cal. App. 4th 890 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

16  <u>Rivadell, Inc. v. Razo</u>, 215 Cal. App. 2d 614, 625 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17  <u>Rotolo v. San Jose Sports & Entertainment, LLC</u>, 151 Cal. App. 4th 307 (2007) . . . . . . . . . . . 17

18  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

19  <u>Schnall v. Hertz Corp.</u>, 78 Cal. App. 4th 1144, 1167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

20  <u>Sears, Roebuck & Co. v. Blade</u>, 139 Cal. App. 2d 580 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

21  <u>Titus v. Canyon Lake Property Owners Assn.</u>, 118 Cal. App. 4th 906 (2004) . . . . . . . . . . . . . 17

22  <u>Walling v. Beverly Enterprises</u>, 476 F.2d 393, 397 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . 19

23  <u>Wyler Summit Partnership v. Turner Broadcasting Inc.</u>, 135 F. 3d 658, 661 (9th Cir. 1998) . . . 14

24  **III.    STATUTES**

25  **STATE STATUTES**

26  California Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

27  California Civil Code § 1714 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28  California Corporation Code § 2105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

1

**III. RULES**

2

Federal Rule of Civil Procedure 12(b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 14

3

Fedreal Rule of Civil Procedure 9(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19, 20

4

**IV. OTHERS**

5

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1204 (2008) . . .  15

6

Adams, supra, 2009 U.S. Dist. LEXIS 46600, *14-15.)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.
## INTRODUCTION

Plaintiff in this action is a victim of a predatory lending scheme whereby he was fraudulently induced to enter into an agreement that may result in the loss of his Property to foreclosure.  Accordingly, Plaintiff respectfully requests, for the following reasons, that Defendants BofA, MERS, and Countrywide's Motion to Dismiss and Motion to Strike be denied in their entirety or, in the alternative, that Plaintiff be given leave to amend his First Amended Complaint.

# II.
## PROCEDURAL HISTORY

Plaintiff filed his initial Complaint ("Complaint") on or about June ??, 2009. In his Complaint, Plaintiff named BofA, America Homekey, Inc., MERS, US Funding Group, Inc., John Morris and DOES 1-20.  Plaintiff, in his Amended Complaint, inadvertently changed the heading listing the defendants.  As a result of this good faith mistake, there has been some confusion as to who Plaintiff is suing in this action. If given leave to amend, Plaintiff will more clearly state the names of the defendants, specifically the legal names of BofA and Countrywide.

# III.

## FACTUAL SUMMARY

On or about October 04, 2005, Defendant Morris approached Plaintiff and solicited him to refinance his residence located at 4525 McDonald Drive, Sacramento, California ("Property"). (FAC ¶¶ 7, 23.) Defendant Morris advised Plaintiff that he could get him the "best deal" and the "best interest rates" available on the market.  (FAC ¶ 24.)  Defendant Morris further advised Plaintiff that if the loan ever became unaffordable, he would simply refinance it into an affordable loan.  This assurance helped induce Plaintiff to purchase his Property.  (FAC ¶ 27.)

Plaintiff advised Defendant Morris he wanted a fixed rate loan for 30 years.  Defendant Shiffer advised Plaintiff that she could get him 100% financing for his residence, but that the only option available was an adjustable rate option mortgage. (FAC ¶ 26.)  Defendant Morris then proceeded to sell Plaintiff a loan that adjusts from 1.500% to 9.95%.  (FAC ¶ 26.)

1    At the time of this loan, Plaintiff fully and accurately documented his income and, based

2    upon this verified income, should have been classified as a "Prime" borrower and placed into a

3    fixed rate 30-year loan.  Plaintiff is informed and believes, and thereon alleges that Defendant

4    Morris classified Plaintiff as a "Sub-Prime"borrower and did not disclose other loan program

5    options.  Plaintiff was told by Defendant Morris that the mortgage loan at issue was the only

6    mortgage loan Plaintiff could qualify for.  Plaintiff is informed and believes, and thereon alleges

7    that he could have qualified for a better loan program and was placed in a sub-prime program

8    simply to enhance the commissions and fees payable to Moving Defendants.  (FAC ¶¶25, 26.)

9    Plaintiff was not given a copy of any of the loan documents prior to closing as required.

10   At closing, Plaintiff was only given a few minutes to sign the documents.  The notary did not

11   explain any of the loan documents nor was Plaintiff allowed to review them.  Plaintiff was

12   simply told to sign and initial the documents provided by the notary.  (FAC ¶ 28.)  The facts

13   surrounding this loan transaction were purposefully hidden to prevent Plaintiff from discovering

14   the true nature of the transaction and the documents involved therein.  Facts surrounding this

15   transaction continue to be hidden from the Plaintiff to this day.  (FAC ¶ 29.)

16   On or about January 4, 2006, Plaintiff completed the Loan on the Property.  The terms of

17   the Loan were memorialized in a Promissory Note, which was secured by a Deed of Trust on the

18   Property.  The Deed of Trust identified Placer Title Company as Trustee, and Defendant First AH

19   as Lender.  (FAC ¶ 30.)

20   Plaintiff's Deed of Trust also identified Defendant MERS as nominee for the Lender and

21   Lender's successors and assigns, and the beneficiary.  (FAC ¶ 32.)  As discussed in more detail in

22   Section IV(A), Defendant MERS was developed to be a document storage company, not a nominee

23   or beneficiary of any of the Defendants.[1]  As a result, designation of Defendant MERS as a nominee

24

25   [1]Defendant MERS was developed by the real estate finance industry to facilitate the sale and resale of
     instruments in the secondary mortgage market and to track registered security instruments for lenders.  (See, Phyllis
26   K. Slesinger & Daniel McLaughlin, Mortgage Electronic Registration System, 31 Idaho L. Rev. 805 (1995)
     (discussing the MERS model).) " This registry, created in 1997 to improve profits and efficiency among lenders
27   eliminate[d] the need to record changes in property ownership in local land records.  Dotting i's and crossing t's can
     be a costly bore....And eliminating the need to record mortgage assignments helped keep the lending machine
28   humming during the boom." (See, Gretchen Morgenson, The Mortgage Machine Backfires, N.Y. TIMES, Sept. 27,

1  on Plaintiff's Deed was improper under Defendant MERS' corporate charter titled "Terms and

2  Conditions". (FAC ¶¶ 9-11, 31.)

3      On or about March 31, 2009, a Qualified Written Request under RESPA ("QWR" or

4  "Request") was mailed to Defendant Countrywide. The QWR included a demand to rescind the

5  loan under the TILA provisions. Defendant Countrywide has yet to properly respond to this

6  Request. (FAC ¶ 32.)

7      Plaintiff believes that discovery will show that none of the Defendants, moving

8  Defendants included, is a "person entitled to enforce" the security interest under the Note and the

9  Deed of Trust as defined in California Commercial Code §§ 3301 and 3309. Plaintiff believes

10  that discovery will show that moving Defendants sold their home loans to other financial entities,

11  Plaintiff's loan included, which "pooled" large numbers of loans, put them into trusts, and sold

12  securities based on them. Plaintiff has alleged that the none of the Defendants, including moving

13  Defendants, own or have any rights with respect to the loan that is the subject of this action, and

14  are not entitled to transfer, assign or enforce the security interest or the Note. Defendants named

15  in this litigation, moving Defendants included, are nothing more than third parties coming in and

16  abusing the non-judicial foreclosure process.

17                                        **IV.**
                                    **DISCUSSION**

18  **A.    MERS**

19      **1.    Creation, Purpose, and Operation**

20      The current financial crisis in the United States can be directly traced to the creation and

21  operation of Defendant MERS.

22      As noted above, in the 1990s lenders developed a scheme whereby they securitized

23  mortgage loans and sold them on Wall Street for a substantial profit. As the success of this

24  scheme blossomed, the lenders expanded their borrower pool into the subprime arena and began

25  introducing toxic and predatory loans, such as those sold to the Plaintiff herein. While lenders

26  could have simply gone to Congress and obtained legal modifications to existing law that would

27  _____

28  2009, at BU1.)

1   allow for these envisioned transfers, they did not.  Instead the lenders, Defendants included,

2   simply, out of profit motive, ignored the law.

3        It soon became evident that the system of physically transferring the notes and recording

4   their transfers was expensive, cumbersome and inefficient for quick action.  Defendant MERS

5   was then developed by the real estate finance industry to streamline the process.  (See, Phyllis K.

6   Slesinger & Daniel McLaughlin, Mortgage Electronic Registration System, 31 Idaho L. Rev. 805

7   (1995) (discussing the MERS model).)  Defendant MERS is a national electronic registration and

8   tracking system that tracks the beneficial ownership interest and servicing rights in mortgage

9   loans.  (See, In re Hawkins, No. BK-S-07-13593, 2009 Bankr. LEXIS 877, at *3 (Bankr. D. Nev.

10   Mar. 31, 2009); see also, In re Vargas, 396 B.R. 511(Bankr. C.D. Cal. 2008).)  Defendant MERS

11   has advertised itself as an innovative process that simplifies the way mortgage ownership and

12   servicing rights are originated, sold and tracked, eliminating the need to prepare and record

13   assignments when trading residential and commercial mortgage loans.  (Id.)  Defendant MERS is

14   basically an electronic phone book for mortgages.[2]

15        MERS' purpose is clearly stated in its corporate charter, identified as "Terms and

16   Conditions":

17          "MERS shall serve as mortgagee of record with respect to all such
              mortgage loans solely as a nominee, in an administrative capacity,

18          for the beneficial owner or owners thereof from time to time. MERS

19

20      [2]"For centuries, when a property changed hands, the transaction was submitted to county clerks who

21   recorded it and filed it away.  These records ensured that the history of a property's ownership was complete and that
  the priority of multiple liens placed on the property - a mortgage and a home equity loan, for example - was accurate.

22      During the mortgage lending spree, however, home loans changed hands constantly.  Those that ended up
  packaged inside of mortgage pools, for instance, were often involved in a dizzying series of transactions.  To avoid

23   the costs and complexity of tracking all these exchanges, Fannie Mae, Freddie Mac and the mortgage industry set up
  MERS to record loan assignments electronically. [MERS] didn't own the mortgages it registered, but it was listed in

24   public records either as a nominee for the actual owner of the note or as the original mortgage holder.  Cost savings
  to members who joined the registry were meaningful.  In 2007, the organization calculated that it had saved the

25   industry $1 billion during the previous decade.  Some 60 million loans are registered in the name of MERS.
     As long as real estate prices rose, this system ran smoothly.  When that trajectory stopped, however,

26   foreclosures brought against delinquent borrowers began flooding the nation's courts.
     [Given that MERS is simply an electronic registry] to call this electronic registry a creditor in

27   foreclosure...is legal pretzel logic, [and] nothing more than an artifice constructed to save time, money and
  paperwork."  (See, Gretchen Morgenson, The Mortgage Machine Backfires, N.Y. TIMES, Sept. 27, 2009, at BU1.)

28

1       shall have no rights whatsoever to any payments made on account
      of such mortgage loans, to any servicing rights related to such
2       mortgage loans, or to any mortgaged properties securing such
      mortgage loans. MERS agrees not to assert any rights (other than
3       rights specified in the Governing Documents) with respect to such
      mortgage loans or mortgaged properties. References herein to
4       "mortgage(s)" and "mortgagee of record" shall include deed(s) of
      trust and beneficiary under a deed of trust and any other form of
5       security instrument under applicable state law."

6      In reality, however, MERS served nothing more than as a shell or front corporation for its

7 "Members".  Defendant MERS' primary function was to hide these toxic and fraudulent loans

8 from borrowers, the government and the investors in the mortgage-backed securities.  Before

9 Defendant MERS was created, it was impossible for mortgages, which have no market value, to

10 be sold at a profit or collateralized and sold as mortgage-backed securities.  Before Defendant

11 MERS, it would not have been possible for Defendants to conceal from government regulators the

12 extent of financial risk entailed in origination of the predatory residential loans, and the fraudulent

13 re-sale and securitization of those otherwise non-marketable loans.  Before MERS became an

14 integral part of the lending industry, the actual beneficiary of every deed of trust on every parcel of

15 land in California could be readily ascertained by merely reviewing the public records.

16      After Defendant MERS was created, it was impossible for a borrower, his or her attorney,

17 the courts, the government, or anyone else, to identify the actual beneficial owner of any particular

18 loan or the property which was the collateral securing the loan.  In other words, post MERS, from

19 the moment the deed of trust was executed by the borrower, there was no true "beneficiary" under

20 the deed of trust.  As a result, all subsequent assignments of any interest in the loan and deed of

21 trust were known by the MERS Members, to be fraudulent and unlawful.  Finally, after creation of

22 Defendant MERS, the servicing rights to these predatory loans, Plaintiff's loan included, were

23 rarely retained by the originator, and instead  transferred to other predatory entities.  This was

24 done for the specific purpose of forcing the borrower to refinance the loan, taking much of the

25 equity through high fees and prepayment penalties, or ultimately foreclose on the residence and

26 take the borrowers home, without any right to do so.  The MERS system led to confusion for the

27 borrowers because when MERS was involved, borrowers who were in default but who hoped to

28

1 work out their loans couldn't identify who they should turn to.  (See, Gretchen Morgenson, The

2 Mortgage Machine Backfires, N.Y. TIMES, Sept. 27, 2009, at BU1.)

3         **2.    Involvement in Plaintiff's Loan**

4         In order to accomplish the scheme outline above, Defendant MERS, after being included

5 on a deed of trust as a nominee, routinely managed multiple substitutions of trustee and

6 assignments of deeds with respect to any particular loan transaction entered into its system,

7 Plaintiff's loan included.

8         In this case, Defendant MERS was included on Plaintiff's Deed as both a nominee and a

9 beneficiary.  The "nominee" status appears to be legal fiction, as there is very limited case law and

10 no statutory authority to support it.  Black's Law Dictionary defines a nominee as "[a] person

11 designated to act in place of another, usually in a very limited way" and as  "[a] party who holds

12 bare legal title for the benefit of others..."  (BLACK'S LAW DICTIONARY, 1076 (8th ed. 2004.)

13 This definition suggests that a nominee possesses few or no legally enforceable rights beyond its

14 ministerial function.  California courts that have considered the meaning of the "nominee"

15 designation have found that the use of the term can make the contract uncertain and therefore a

16 nullity.  (See, Rivadell, Inc. v. Razo, 215 Cal. App. 2d 614, 625 (1963); see also, Cisco v. Van

17 Lew, 60 Cal. App. 2d 575, 583-584 (1943) (in its ordinary meaning, a nominee represents the

18 principal in only a nominal capacity and does not receive any property or ownership rights of the

19 person represented.)[3]  As a result, it is unclear exactly what interest Defendant MERS acquired in

20 its capacity as a nominee for Defendant AH.[4]

21         Alternatively, Defendant MERS' designation as a beneficiary is similarly problematic.  A

22 "beneficiary" is defined as "one designated to benefit from appointment, disposition, or

23 assignment...or to receive something as a result of a legal arrangement or instrument."  (In re

24 ────────────────

25         [3]Similarly, courts in other states have repeatedly held that a nominee of the lender of the note and mortgage
lacks ownership of such note and mortgage and consequently does not have the power or right to assign.  (See,

26 LaSalle Bank Nat. Ass'n v. Lamy, 2006 WL 2251721 (N.Y.Sup. 2006) (citations omitted); see also, Landmark
National Bank v. Kesler, 2009 Kan. LEXIS 834 (Kan. Aug. 28, 2009).)

27
        [4]Plaintiff does recognize though, that sorting out each Defendant's role, rights and liabilities in this case

28 should be appropriately reserved for discovery.

1    <u>Hawkins</u>, 2009 Bankr. LEXIS 877, at *7 (quoting BLACK'S LAW DICTIONARY 165 (8th ed.

2    2004).)  MERS is not and cannot be a beneficiary under the Plaintiff's Note.  It did not lend the

3    money to the Plaintiff.  Further, Plaintiff was not required by statute or contract to pay money to

4    Defendant MERS on the mortgage, and there is no evidence that Defendant MERS would realize

5    any value of the Property through the non-judicial foreclosure against Plaintiff's Property.

6    Additionally, Plaintiff's Note consistently refers only to rights of the Lender, including rights to

7    receive notice of litigation, collect payments, and to enforce the debt obligation.  Plaintiff's Note

8    consistently limits Defendant MERS to acting "**<u>solely</u>**" as the nominee of the Lender.  The

9    relationship that Defendant MERS has to Defendant AH, the original lender, is more akin to that

10   of a straw man.  As a result, in its capacity as a nominee for Defendant AH, Defendant MERS did

11   not have ownership interest as a beneficiary.

12        Moreover, nominating Defendant MERS as a beneficiary under Plaintiff's Deed directly

13   conflicts with Defendant MERS' "Terms and Conditions."  The latter states that Defendant

14   MERS cannot act as a beneficiary, but  may act "solely as a nominee, <u>in an administrative</u>

15   <u>capacity</u>...[and] <u>shall have no rights whatsoever to any payments made on account of such</u>

16   <u>mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged</u>

17   <u>properties securing such mortgage loans.</u>"  (FAC ¶¶ 9-10 (<u>emphasis added</u>).)  As the Court noted

18   in <u>In re</u> Hawkins case, "[t]o reverse an old adage, if it doesn't walk like a duck, and doesn't quack

19   like a duck then its not a duck."  (<u>In re</u> Hawkins, 2009 Bankr. LEXIS 877, at *7.)  Plaintiff's

20   position is that Defendant MERS' ability to engage in any transaction relating to Plaintiff's loan

21   was limited to administrative acts of tracking and recording, as is prescribed by its charter.[5]

22        As discussed above, Defendant MERS does not own any legal or beneficial interest in

23   Plaintiff's Property, given its status as an administrative nominee for Defendant AH.

24

25   ─────────────────

26        [5]Even if Defendant MERS' "Terms and Conditions" allowed it to act as a beneficiary under Plaintiff's
     Deed, Plaintiff has alleged that Defendant MERS was not licensed to do business in California.  (FAC ¶¶ 9, 32.)  The

27   fact that Defendant MERS knew it needed to file with the California Secretary of State is evidenced by its corporate
     filings on June 1, 2009, although the filing may have been prompted by the recent onslaught of litigation in

28   California against Defendant MERS.

1  Additionally, Defendant MERS' acting as a beneficiary was done in violation of Defendant

2  MERS' limited authority under its corporate "Terms and Conditions" charter.

3  **B.    Legal Standard**

4      **1.    Dismissal Is Inappropriate Under Rule 12(b)(6)**

5          On a motion to dismiss, the Court should accept all the allegations as true and draw all

6  reasonable inferences in favor of the plaintiff.  (Scheuer v. Rhodes, 416 U.S. 232, 236, overruled

7  on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto 405 U.S. 319, 322

8  (1972).)  To survive a motion to dismiss a plaintiff need to plead "only facts to state a claim for

9  relief that is plausible on its face."  (Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570

10  (2007).)  A dismissal is only appropriate where the plaintiff fails to state a claim supportable by

11  any cognizable legal theory.  (Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9th Cir.

12  1990).)  A complaint must "only give the defendant fair notice of what plaintiff's claim and the

13  grounds of which it rests." (Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated on other grounds

14  by Bell Atlantic Corporation v. Twombly, 550 U.S. at 563.)  Any existing ambiguities must be

15  resolved in favor of the pleading.  (Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).)

16          In deciding a motion to dismiss, the court must accept as true the allegations of the

17  complaint and must construe those allegations in a light most favorable to the non-moving party.

18  (Wyler Summit Partnership v. Turner Broadcasting Inc., 135 F. 3d 658, 661 (9th Cir. 1998).)

19  Generally, a court may not consider any material beyond the pleading in ruling on a 12(b)(6)

20  motion.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F. 2d 1542, 1555 n. 19 (9th Cir.

21  1990).)  However, where it is inclined to grant a motion to dismiss, a district court should provide

22  leave to amend unless it is clear that a complaint could not be saved by any amendment.  (Chang

23  v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).)

24          In this case, Plaintiff has plead more than sufficient facts to allege the nature and extent of

25  the wrongful conduct committed by each of the moving Defendants in paragraphs 17-47 of

26  Plaintiff's FAC.  These factual allegations are thereafter incorporated by reference into each

27  applicable Cause of Action.  Each Cause of Action identifies the elements of that particular Cause

28  of Action and specifies which Defendant or Defendants that Cause of Action applies to.

1    At this point in the litigation, the Court must consider the allegations in Plaintiff's FAC as

2   true, without requiring the Plaintiff to prove his case.  The federal notice pleading requires

3   Plaintiff only to allege enough facts to place the moving Defendants on notice of the cause of

4   action, general facts, elements and damages claimed.  Proof of the specific and detailed

5   wrongdoing, of which each of the Defendants are most culpable and responsible for, is reserved

6   for the later stage of the litigation due to the simple reason that such proof can only be obtained

7   through discovery.

8    Moreover, Plaintiff has alleged that Defendants together, in a "conspiratorial nature",

9   undertook the misdeeds herein.  (FAC ¶ 45.)  Defendants named herein are indeed liable to the

10   extent that they acted as agents, servants and/or employees of the remaining defendants and for

11   each other.  (FAC ¶¶ 33-36.)  The Ninth Circuit has held that averments of agency are not

12   required in a complaint.  (See, Greenberg v. Sala, 822 F.2d 882, 886 (9th Cir. 1987) (holding that

13   "[a] person legally responsible for an act may be alleged to have committed it without going into

14   the theories which support that ultimate fact").)  As such, the "civil conspiracy" as alleged and

15   incorporated into all subsequent Causes of Action sufficiently provides the threshold legal and

16   factual basis for several causes of action that at first blush may seem inappropriate for a particular

17   Defendant. The overview to this "shell" game is that all who participated in this "get rich quick"

18   scheme, cannot now claim that they are somehow an innocent, unrelated third party.

**C.    Specific Causes of Action**

19
20   **1.    Plaintiff's Second Cause of Action for Violation of Rosenthal Act is Sufficient
        to State a Cause of Action Against Defendants Bank of America, Countrywide
21       and MERS**.

22    In enacting Civil Code § 1788 et al., (the Rosenthal Act), the California Legislature found

23   that the banking and credit system and grantors of credit to consumers are dependent upon the

24   collection of just and owing debts.  Unfair or deceptive collection practices undermine the public

25   confidence, which in turn is essential to the continued functioning of the banking and credit

26   system and sound extensions of credit to consumers.  There is a need to ensure that debt collectors

27   and debtors exercise their responsibilities to one another with fairness, honesty and due regard for

28

1   the rights of the other. (California Civil Code § 1788.1(a)(1) & (2).) Although California

2   incorporated the federal Fair Debt Collection Practices Act ("FDCPA") into the Rosenthal Act

3   under the California Civil Code § 1788.17, liability under the state statute is broader than that

4   contained in the FDCPA. (See, Izenberg v. ETS Servs., LLC, 589 F. Supp. 2d 1193, 1199 (C.D.

5   Cal. 2008).) Unlawful debt collection activities during foreclosure fall within the scope of the

6   California's Rosenthal Act. (See, McGrew v. Countrywide Home Loans, Inc., 628 F. Supp. 2d

7   1237, 1242-1243 (S.D. Cal. 2009).)

8

9       Moving Defendants seem to argue that Plaintiff has not pled his Rosenthal Act claim with

10  sufficient specificity. (Motion to Dismiss, 8:19-24.) Moving Defendants fail to recognize that

11  this controversy is before a federal court. "[T]he rules regarding the standard of specificity to be

12  applied to federal pleadings...are governed by the federal rules and not by the practice of the

13  courts in the state in which the federal court happens to be sitting." (5 Charles Alan Wright &

14  Arthur R. Miller, Federal Practice and Procedure, § 1204 (2008) (collecting cases); see, e.g.,

15  Hanna v. Plumer, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law

16  and federal procedural law.").) At this point, all Plaintiff is required to do is state the factual basis

17  for her Rosenthal claim pursuant to Rule 8. Plaintiff has clearly alleged sufficient facts to state a

18  Rosenthal Act violation against Defendants HLS, First Franklin and MERS.

19

20      Plaintiff alleged he was not provided with the requisite RESPA disclosures, and copies of

21  the loan documents for review before being rushed into signing the loan documentation.[6] (FAC

22  ¶¶ 28-29, 80-82.) In short, due to fraud at the inception of this loan and the failure to provide

23  statutory disclosures that would have appraised Plaintiff of the actual terms of the loans sold to

24  him, Plaintiff's loans are void and unenforceable against him by Defendant AH. (See e.g., In re

---

[6]Plaintiff's position is that Defendant AH's objective in placing Plaintiff into a subprime loan is to
ultimately foreclose upon Plaintiff's Property.

<u>Garcia</u>, 11 B.R. 10, *12 (Bankr. D. Ariz. 1981) (holding that failure to provide requisite

disclosures to the debtor invalidates the Trust Deed).)

As a result of unfair and deceptive terms of the loans subject to this litigation, Defendants

BofA and Countrywide collected on a debt not owed to it, made false reports to credit reporting

agencies, falsely stated the amount of debt, increased the amount of debt by including amounts not

permitted by law or contract, and used unfair and unconscionable means in an attempt to collect a

debt against void security interests.  (FAC ¶ 66.)

Further, Plaintiff pled that Defendant MERS put the whole fraudulent scheme in motion,

whereby the other named Defendants were enabled to falsely state the amount of a debt, increase

the amount of a debt by including amounts that are not permitted by law or contract, and use

unfair and unconscionable means in an attempt to collect a debt against a void security interest.

(FAC ¶ 74.)  The latter allegations put each of the Moving Defendants on notice of the Rosenthal

Act claim pled against each of them and allows them to answer accordingly and satisfy the general

requirements of Rule 8 in that they identify the circumstances, occurrences and events of the

challenged conduct.  Thus, Moving Defendants Motion to Dismiss Plaintiff's Rosenthal Act claim

should be denied.

**2.    <u>The Plaintiff has Sufficiently Stated the Third Cause of Action for Negligence Against Defendants Bank of America, MERS and Countrywide.</u>**

A general duty not to harm another is owed to everyone.  (<u>See, e.g.</u>, <u>Norfolk Shipbuilding</u>

<u>& Drydock Corp. v. Garris</u>, 532 U.S. 811 (2001); <u>see also</u>, Cal. Civ. Code § 1714; <u>McGarry v.</u>

<u>Sax</u>, 158 Cal. App. 4th 983 (2008); <u>Giraldo v. Department of Corrections & Rehabilitation</u>, 168

Cal. App. 4th 231(2008); <u>Peart v. Ferro</u>,119 Cal. App. 4th 60 (2004)  (holding that under general

principles of negligence law, people have a duty to use due care to avoid injury to others and may

be held liable if their careless conduct injures another person); <u>Rotolo v. San Jose Sports &</u>

1  Entertainment, LLC, 151 Cal. App. 4th 307 (2007); Titus v. Canyon Lake Property Owners Assn.,

2  118 Cal. App. 4th 906 (2004).)  Negligence is the breach of a duty that directly causes damages.

3
4  A plaintiff is entitled to damages from those defendants who concurred in the tortious scheme

5  with knowledge of its unlawful purpose.  (Black v. Sullivan, 48 Cal. App. 3d 557, 566 (1975).)

6  Tacit consent as well as express approval is sufficient to establish liability.  (Holder v. Home Sav.

7  & Loan Assn., 267 Cal. App. 2d 91, 108 (1968).)[7]

8
9  **a.    Plaintiff's Negligence Claim Has Been Properly Alleged Against Each**
**of the Moving Defendants.**

10  Plaintiff alleged that all Defendants, including each Moving Defendant acted negligently

11  when it failed to maintain the original Mortgage Note, and failed to properly create original

12  documents.  (FAC ¶ 77.)  Similarly, Defendants BofA and Countrywide owed a duty to Plaintiff

13  to engage in servicing of Plaintiff's loan with due care to avoid harm to the Plaintiff.  (FAC ¶ 73.)

14
15  The FAC contains factual allegations that show fraud at the inception of the loan, which renders

16  the loan invalid, a fact of which Defendants BofA and Countrywide were was aware.  (FAC ¶¶

17  24-29.)  As a result, Plaintiff has alleged that Defendant BofA and Defendant Countrywide

18  breached its duty when it took payments to which it was not entitled, charged fees it was not

19  entitled to charge, and made or otherwise wrongfully authorized negative reporting of Plaintiff's

20  creditworthiness to various credit bureaus.  (FAC ¶ 74.)  Once Plaintiff became aware of the

21  actual terms of his loan, he sent Defendant Countrywide a Qualified Written Request ("QWR"),

22  whereby he requested documentation relating to Defendant HLS's servicing of the loan.  (FAC ¶

23  32.)  To date, Defendant Countrywide has failed to properly respond to Plaintiff's QWR, further

24
25

26  [7]Moving Defendants contend that Plaintiff's negligence cause of action fails because a financial institution
owes no duty of care, as long as its conduct does not exceed the scope of its conventional role as a mere lender of
27  money. (Motion to Dismiss, 10:14-25.)  This position is wrong with respect to Moving Defendants .  Neither
Defendant BofA nor Defendant Countrywide (servicer), nor MERS (nominee) lent money to Plaintiff.  In this case,
28  the lender was Defendant AH.

preventing Plaintiff from determining the actual terms of his loan.  Defendant Countrywide had a statutory duty, pursuant to 12 U.S.C. § 2605(e) to respond, within 60 days, to Plaintiff's QWR. To date, Defendant Countrywide has failed to <u>properly</u> respond to Plaintiff's QWR.  Both of these failures constitutes negligence *per se*.  (See, <u>Ramirez v. Nelson</u>, 138 Cal. App. 4th 890 (2006); <u>Quiroz v. Seventh Ave. Center</u>, 140 Cal. App. 4th 1256 (2006).)

Plaintiff properly pled the factual basis and the elements stating a negligence claim against the each of the moving Defendants.  Accordingly, Moving Defendants Motion to Dismiss should be denied.

          **b.**     <u>**Plaintiff's Negligence Claim Against Moving Defendants Is Equitably Tolled and Is Not Barred**</u>

Moving Defendants claim that Plaintiff's negligence claim is barred by the statute of limitations.  (Motion to Dismiss, 11:7-12.)  Plaintiff pled that the facts surrounding this loan transaction were purposefully hidden to prevent Plaintiff from discovering the true nature of the documents, and that facts surrounding this transaction continue to be hidden from him to this day. (FAC ¶ 29.)  Fraudulent concealment of facts on which plaintiff's action and right of recovery tolls statute of limitations until plaintiff discovers or in exercise of reasonable diligence should have discovered the operative facts.  (See, <u>Sears, Roebuck & Co. v. Blade</u>, 139 Cal. App. 2d 580 (1956); <u>see also</u>, <u>E-Fab, Inc. v. Accountants, Inc. Services</u>, 153 Cal App 4th 1308 (2007) (holding that accrual was triggered upon discovery of defendant's misrepresentations giving rise to plaintiff's negligence cause of action).)  Accordingly, Plaintiff's Negligence Cause of Action is not barred.  Thus, Plaintiff has properly pled the factual basis and elements stating a negligence claim, and moving Defendants Motion to Dismiss should be denied.

1

**3.    Plaintiff's Fourth Cause of Action for Violation of RESPA.**

2      Plaintiff will be dismissing, without prejudice, Moving Defendants from this Cause of

3  Action.

4      **4.    Plaintiff's Sixth Cause of Action for Fraud is Sufficient to State a Cause of**
5         **Action Against Moving Defendants.**

6      To meet the requisite level of specificity, Rule 9(b) only requires identification of

7  circumstances constituting fraud, including the time, place, and nature of the alleged fraudulent

8  activities, such that a defendant can prepare adequate answer to allegations.  (Bosse v. Crowell

9  Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977).)  A pleading is sufficient under Rule 9(b)

10

11  if it identifies circumstances constituting fraud so that the defendant can prepare an adequate

12  answer from the allegations.  (Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993), quoting

13  Gottreich v. SF Inv. Corp., 552 F.2nd 866 (9th Cir. 1977).)

14      However, Rule 9(b) does not require nor make legitimate pleading of detailed evidentiary

15  matters.  (Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973).)[8]  Further, Rule 9(b)

16  may be relaxed with respect to matters within an opposing party's knowledge.  Neubronner v.

17  Milken, 6 F.3d 666, 672 (9th Cir. 1993).)  Under Rule 9(b), it is also not necessary, once a

18  complaint adequately identified a particular defendant with a category of defendants allegedly

19

20  responsible for some continuing course of conduct, to plead more than group conduct of

21  defendants.  (In re Equity Funding Corp. of Am. Sec. Litig., 416 F.Supp. 161, 181 (C.D. Cal.

22  1976).)  Moreover, in cases where fraud was conducted over several years, a plaintiff is not

23  required to allege each date of each defendant's fraudulent conduct since such requirement would

24

25

26

27      [8]As one California court put it succinctly, "F.R.Civ.P. 9(b)'s heightened pleading standard 'is not an
   invitation to disregard Rule 8's requirement of simplicity, directness, and clarity.'" (Adams, supra, 2009 U.S. Dist.
28  LEXIS 46600, *14-15.)

1    defeat the purpose of Rule 8 requiring that pleading be short, plain, and in concise statements.

2    (Id.)

3          In this case, Plaintiff has identified specific facts and circumstances that constitute fraud.

4    This identification allows moving Defendants to prepare an adequate answer.  Plaintiff alleged

5    that he was fraudulently induced into accepting a predatory mortgage loan from Defendant AH

6    with terms that were detrimental to him on November 29, 2006.  (FAC ¶¶ 25-30.)  This fraud was

7    tacitly accepted and endorsed by Defendant AH when it approved Plaintiff's loan based on

8    overstated income in the loan application and express misrepresentations of the broker

9    Defendants, and collected on by Defendants BofA and Countrywide.  (FAC ¶¶ 25, 98-99.)

10   Plaintiff also pled that he was induced into this loan by promises that he could refinance if the

11   loan ever became unaffordable. (FAC ¶ 27.)  Further, as enumerated above, Plaintiff alleged that

12   Defendant AH failed to provide Plaintiff with any of his loan documents prior to signing, or any

13   of the requisite statutory disclosures to appraise Plaintiff of the terms of the loan that was actually

14   sold to him.  (FAC ¶¶ 28-29.)

15

16         Plaintiff also alleged that Defendant MERS' actions were undertaken with the purpose of

17   concealing identities of the actual beneficial owner of Plaintiff's loan.  Plaintiff pled that the entire

18   scheme of selling and transferring notes and deeds, in which Defendant MERS played a central

19   role, was fraudulent.  (FAC ¶¶ 18, 33, 44.)  In addition, Plaintiff alleged that Defendant MERS

20   played a key part in a scheme whereby Defendants, over the period of three years, sold Plaintiff's

21   home loan to other financial entities, which "pooled" large number of loans, put them into trusts,

22   and sold securities based on them.  (FAC ¶ 19.)   Thus, none of the moving Defendants had an

23   enforceable interest in Plaintiff's Mortgage Note or Deed of Trust.  As such, moving Defendants

24   are attempting to obtain putative legal title to Plaintiff's Property without ever establishing that

25   any of them was ever a "person entitled to enforce" the security interest under the Note and Deed

of Trust.  These allegations, which, for the purposes of this Motion to Dismiss, must be taken as true, establish a claim for fraud and give the moving Defendants sufficient notice to mount a defense.

Lastly, this action raises the issue of fraud in the inducement of the loan and fraud in subsequent actions by the moving Defendants.  Frankly, it would be wrong to apply a bar of recovery against the Plaintiff when majority of evidentiary facts in this case were purposefully hidden from Plaintiff at the inception of the loan and continue to be hidden from him to this day.  (FAC ¶¶ 28-29.)  Said facts are wholly within each of the named Defendants' knowledge, and discovery is needed to determine each Defendant's role and liability in this case.[9]  To deny Plaintiff recovery would condone fraud.  The law cannot condone such a result.  Accordingly, Movning Defendants' Motion to Dismiss Plaintiff's claim for Fraud should be denied.

### 5.      Plaintiff's Seventh Cause of Action for Unfair Business Practices is Sufficient to State a Cause of Action Against Moving Defendants.

The UCL prohibits "any unlawful", unfair or fraudulent" business practice.  (Cal. Bus. & Prof. Code § 17200.)  A practice is unfair if the court determines that the impact of the practice or act on its alleged victim outweighs the reasons, justifications, and motives of the alleged wrongdoer.  (Podolsky v. First Healthcare Corp.., 50 Cal. App. 4th 632, 647 (1996).)  A practice is fraudulent if the members of the public are likely to be deceived by the practice.  (Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000).)  The statute "has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices that specifically prescribed by any other law.'"

---

[9]In particular, the identities of Defendant First Franklin's underwriters, who approved a loan despite the misrepresentations made to Plaintiff.  It was the lending industry custom not to reveal identities of the loan underwriters to prevent inappropriate contact and influence from the borrower.  As such, discovery is essential in this case.

1 (Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1122, (9th Cir. 2009), quoting Kasky v.

2 Nike, Inc., 27 Cal. 4th 939, 949 (2002).)

3        Here, Plaintiff made viable charging allegations that Moving Defendants have engaged in

4 unfair and fraudulent business practices.  Plaintiff alleged multiple violations ("hooks") of

5 specific statutory and common law provisions under the federal and state laws, including claims

6 for Rosenthal violations, fraud, and negligence against the moving Defendants.  These allegations

7

8 are incorporated into Plaintiff's UCL claim.

9        Plaintiff also made viable charging allegations that Defendant MERS engaged in unfair,

10 unlawful, and fraudulent business practices.  In particular, Plaintiff pled that Defendant MERS

11 engaged in transacting business in the state of California, in violation of California Corporations

12 Code section 2105(a).  (FAC ¶ 9; see, Farmers Ins. Exchange v. Superior Court, 2 Cal. 4th 377,

13 383 (1992).)   Furthermore, having a single front man, or nominee, for various financial

14 institutions makes it difficult for mortgagors and other institutions to determine the identity of the

15 current note holder.  Defendant MERS' practice of "obscuring from the public the actual

16

17 ownership of a mortgage...[creates] the opportunity for substantial abuse and prejudice to

18 mortgagors..." (Johnson v. Melnikoff, 2008 WL 4182397, *4 (N.Y.Sup. 2008); see also,

19 Plaintiff's RFJN, Exhibit 2, pgs. 10-15.)  Simply put, Defendant MERS, as a digital mortgage

20 tracking service, created to enable its Members, including Defendants BofA and Countrywide to

21 circumvent the statutory registration requirements for notice.  This system effectively precluded

22

23 the public, and Plaintiff in particular, from receiving notice of who holds the obligation on a

24 mortgage.

25        These allegations are sufficient for Rule 8 purposes to place each of the Moving

26 Defendants on notice of the UCL claim pled against them.  Accordingly, the Court should deny

27 Moving Defendants' Motion to Dismiss Plaintiff's UCL claim.

28

**D.** **Moving Defendants' Motion to Strike Must Be Denied Because Plaintiff Has Alleged Sufficient Facts to Warrant Recovery of Punitive Damages**

Motions to strike are generally disfavored because they "potentially serve only to delay." (Heller Fin. Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989); see also, LaSalle Bank Nat'l Assoc. v. Paramount Props., 588 F.Supp.2d 840, 860 (N.D. Ill. 2008).)

Moving Defendants move to strike Plaintiff's allegations set forth in the FAC ¶¶ 62,94, 107, 125, PRAYER ¶ 7.  Plaintiff has alleged that the moving Defendants have engaged in "despicable conduct" offensive to reasonable people and done with conscious disregard of her rights.  The FAC's Sixth Cause of Action is for Fraud, and has been pled with sufficient specificity as discussed above.  California Civil Code section 3294 specifically permits recovery of punitive damages where defendant has engaged in "oppression, fraud and malice."  Further, Plaintiff pled that Defendants sold Plaintiff a toxic loan with predatory terms for their financial gain with reckless disregard to Plaintiff's rights.  (FAC ¶ 23-30.)  Additionally, Plaintiff alleged that Defendant MERS wilfully, and with full knowledge and/or reckless disregard for the consequences, acted in bad faith toward Plaintiff by failing to comply with its own "Terms and Conditions" and multiple statutory provisions, including, but not limited to, provisions relating to possession and transfer of Plaintiff's Note and Deed in accord with California Commercial Code sections 3301 and 3309.  (FAC ¶ 33.)  Thus, the Court should deny Moving Defendants' Motion to Strike Punitive Damages.

**IV.**
**CONCLUSION**

Plaintiff is not contending that he does not owe a debt, only that he does not owe moving Defendants.  Plaintiff simply requests the opportunity to conduct discovery to determine the real parties in interest.  Based upon the FAC and the argument set forth herein, Plaintiff respectfully

1    requests that Moving Defendants' Motion to Dismiss and Motion to Strike be denied.  In the

2    alternative, should the Court desire more facts be plead, Plaintiff requests leave to amend.

3    DATED: October 23, 2009                          Respectfully submitted

4

5

6                                                    /s/ Michael J.M. Brook
                                                     MICHAEL J.M. BROOK
7                                                    Attorney for Plaintiff William Bardin

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

STATE OF CALIFORNIA      )
                                 )ss.
COUNTY OF SACRAMENTO )

      I am a citizen of the United States and a resident of the County of Sacramento.  I am over the age of 18 years and not a party to the within above-entitled action; my business address is 2882 Prospect Park Dr, Ste 350, Rancho Cordova, California, 95670

      On this date I served the foregoing document described as follows: **FIRST AMENDED COMPLAINT**

on the following interested parties in this action:

SEE ATTACHED SERVICE LIST

      The following is the procedure in which service of this document was effected:

❑      Facsimile, Time: _____ P.M.; Date:

❑      Federal Express, Priority Overnight

❑      United Parcel Service, Next Day Air

❑      United States Mail,

✓      By Electronic Mail - I hereby certify that I electronically transmitted the attached document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the above listed CM/ECF registrants.

      I declare under penalty of perjury that the foregoing is true and correct under the laws of the State of California and that this declaration was executed on October 23, 2009 at Sacramento, California.


                        /s/ Liliana A. Chavez C._____
                        LILIANA A. CHAVEZ C.

1

## SERVICE LIST

2

**David Nathan de Ruig**                          Representing
3
Bryan Cave LLP
2 Embarcadero Center, Suite 1410                  Defendant Countrywide Home Loans, Inc.
4
San Francisco , CA 94111
5
Email: david.deruig@bryancave.com                Defendant Mortgage Electronic Registration
                                                  Systems, Inc.
6
**Robert Alan Padway**
Bryan Cave LLP
7
2 Embarcadero Center, Suite 1410
San Francisco , CA 94111
8
Email: robert.padway@bryancave.com

9

10

11
**Jeffrey Dean Farrow**                           Representing
12
Michelman & Robinson, LLP
4 Hutton Centre, Suite 300                        Defendant America Homekey, Inc.
13
Santa Ana , CA 92707
Email: jfarrow@mrllp.com
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28